UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

JOMONNI MORRIS,

                     Plaintiff,

          -against-

CITY OF NEW YORK; SUPERVISOR BIBI
SUAREZ, CO SEAN COVINGTON, CO "JOHN"
QUAYAM, CO D. CUMMINGS, CO LAQUANNA
SIMON, CO BROOKS, CO JIGGETTS, CO N.
ROSARIO, CO K. WHITE, CO "JOHN" BAILEY;
DOC COMMISSIONER CYNTHIA BRANN, DOC
CHIEF OF DEPARTMENT HAZEL JENNINGS,
NYC DEPARTMENT OF CORRECTION, Correction
Officers JOHN and JANE DOE 1 through 10, all
defendants individually and in their official capacities;

                     Defendants.
------------------------------------------------------------------- x

                    **COMPLAINT**

           Jury Trial Demanded

                ECF Case

       PLAINTIFF, JOMONNI MORRIS, by attorney Katherine E. Smith, complaining of the defendants, respectfully alleges as follows:

### NATURE OF THE ACTION

       1.     PLAINTIFF brings this action for compensatory damages, punitive damages and attorneys' fees pursuant to 42 U.S.C. §1983, 42 U.S.C. §1988, and New York State Law for violations of PLAINTIFF'S state and federal civil rights, and common law rights, by defendants the CITY OF NEW YORK, SUPERVISOR BIBI SUAREZ, CO SEAN COVINGTON, CO "JOHN" QUAYAM, CO D. CUMMINGS, CO LAQUANNA SIMON, CO BROOKS, CO JIGGETTS, CO N. ROSARIO, CO K. WHITE, CO "JOHN" BAILEY, DOC COMMISSIONER CYNTHIA BRANN, DOC CHIEF OF DEPARTMENT HAZEL JENNINGS,  NYC DEPARTMENT OF CORRECTION Correction Officers JOHN and

JANE DOE 1 through 10, all defendants individually and in their official capacities (hereinafter the "Individual Defendants") as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fourteenth, Fifth and Eighth Amendments to the Constitution of the United States and under New York State Law.

3.      The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343 and 1367(a).

4.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c), as the incidents alleged herein occurred in this district.

## JURY DEMAND

5.      PLAINTIFF demands a trial by jury in this action.

## PARTIES

6.      At all relevant times, PLAINTIFF, JOMONNI MORRIS, is a resident of Bronx County in the City and State of New York.

7.      Defendant City of New York ("City") is a municipal corporation organized under the laws of the State of New York.

8.      Defendant City, maintains the New York City Department of Correction ("DOC"), a duly authorized public authority and/or correction department, authorized to perform all functions of a correction department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of defendant

City. The DOC is responsible for the appointment, training, supervision, promotion and discipline of correction officers and supervisory security officers and staff, including the individually named defendants herein.

9.     At all times relevant hereto, CYNTHIA BRANN was the Commissioner of DOC, acting in the capacity of agent, servant, and employee of the City of New York, within the scope of his employment as such, and acting under color of state law.

10.     On information and belief, defendant BRANN, as Commissioner of DOC, was responsible for the policy, practice, supervision, implementation, and conduct of all DOC matters and was responsible for the training, supervision, and conduct of all DOC personnel, including the defendants referenced herein.

11.     As Commissioner, defendant BRANN is also responsible for the care, custody, and control of all inmates housed in the Departments' jails. As Commissioner, BRANN was provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other breaches of security in the Department jails.

12.     In addition, at all relevant times, defendant BRANN was responsible for enforcing the rules of the DOC, and for ensuring that DOC personnel obey the laws of the United States and of the State of New York. Defendant BRANN is sued in her individual capacity.

13.     At all times relevant hereto, HAZEL JENNINGS was the Chief of Department of DOC, acting in the capacity of agent, servant, and employee of the City of New York, within the scope of her employment as such, and acting under color of state law.

14.     As Chief of Department, she was the highest ranking uniformed member of DOC, and was responsible for the supervision, oversight, and discipline of the uniformed

security staff in all the Department jails. Defendant JENNINGS was also responsible for the care, custody, and control of all inmates in the Department jails.

15.     As Chief of Department, Defendant JENNINGS is provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other breaches of security in Department jails. Defendant JENNINGS is sued in her individual capacity.

16.     At all times relevant, Defendants SUAREZ, COVINGTON, QUAYAM, CUMMINGS, SIMON, BROOKS, JIGGETTS, ROSARIO, WHITE, BAILEY, were correction officers and/or supervisors at DOC who were, and are being sued individually and in their official capacity.

17.     Defendants NYC DEPARTMENT OF CORRECTION Officers JOHN and JANE DOE 1 through 10, individually and in their official capacities were Department of Correction correction officers, or supervisors employed by NYC DOC.  PLAINTIFF does not know the real names and shield numbers of defendants JOHN & JANE DOE  1 through 10.

18.     At all times hereinafter mentioned, the Individual Defendants, either personally or through their employees/agents, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

19.     Each and all of the acts of the Individual Defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant City of New York.

20.     Each and all of the acts of the Individual Defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant City of New York.

21.     The City of New York is responsible for the acts of the Individual Defendants under the theory of *respondeat superior.*

22.     Plaintiff has complied with conditions precedent to suit.

## STATEMENT OF FACTS

### Background

23.     DOC officers have had a long history of unlawfully using inmates to restore order within the DOC Facilities.

24.     On February 14, 2008, the Bronx District Attorney ("DA") indicted correction officer Lloyd Nicholson of RNDC, for using inmates as enforcers and encouraging inmate-on- inmate violence. The DA charged Officer Nicholson with gang assault, assault, and official misconduct, in connection with a scheme to use teenage inmates to enforce discipline at Robert N. Davoren Complex ("RNDC").

25.     This indictment was the result of investigations by the New York City Department of Investigations and the Inspector General for DOC which, according to the DA, "uncovered a systematic program allegedly run by Nicholson, in which he would use a select group of inmates to maintain order and enforce discipline. The group of inmates would enforce rules of conduct, established by Nicholson, in exchange for preferential treatment, which included allowing them to extort commissary and telephone privileges as well as personal property from other inmates. It is alleged that Nicholson benefited by not having to constantly monitor his post during his overnight tour of duty."

26.     On January 22, 2009, the Bronx DA indicted three RNDC correction officers for conspiracy, enterprise corruption, and/or assault. The DA, in his press release, alleged that correction officers were "acting as managers for an organization referred to as "the Program" at RNDC."

27.     The "Program" has since been revitalized at RNDC under a new moniker and was enforced by DOC supervisors and correction officers.

28.     Specifically, from approximately 2016 to the present, several officers including SUAREZ, COVINGTON, QUAYAM, CUMMINGS, SIMON, BROOKS, JIGGETTS, ROSARIO, WHITE, BAILEY, and the DOE Defendants and other members of the ART Team reactivated and reinstated the "Program."

29.     What was formerly known as the Program was now called the "World Tour."

30.     Defendants BRANN and JENNINGS were aware of and specifically sanctioned the World Tour, praising and incentivising officers who participated in the World Tour.

31.     In carrying out the World Tour, an officer would put a "hit" out on an inmate.

32.     That "marked" inmate would be subject to harassment at the hands of Correction Officers facility-wide.

33.     Moreover, officers would inform fellow inmates that a specific inmate was on the World Tour, and would threaten to take away privileges and inflict punishment if the inmates did not keep the marked inmate "in-line" by use of force.

34.    In carrying out the World Tour, fellow inmates would use violence upon the marked intimate to win favor with correction officers.

35.     The defendant officers in turn would turn an active blind eye to the inmate-on-inmate violence that was inflicted at their behest and would confer benefits to the inmates who would do their bidding.

36.    Defendant officers would also falsely accuse marked inmates of possessing contraband to have inmates transferred to different facilities and otherwise inflict punishment.

37.    Officers who refused to comply with the World Tour were disciplined, and subjected to harassment and abuse.

**Plaintiff on the World Tour**

38.    On or about May 25, 2018, Plaintiff was in the custody of NYC DOC, housed in RNDC, when he was seventeen (17) years old.

39.    Soonthereafter, Plaintiff had a verbal confrontation with Defendant SIMON.

40.    Defendant    SIMON,    SUAREZ,    COVINGTON,    QUAYAM, CUMMINGS, SIMON, BROOKS, JIGGETTS, ROSARIO, WHITE, BAILEY, and the DOE Defendants (the "Individual Defendants") then placed a "hit" out on Plaintiff and put him on the World Tour and falsely accused Plaintiff of possessing contraband.

41.    The Individual Defendants targeted PLAINTIFF because he is the son of a former correction officer, and because they wanted to use him as an example to other inmates.

42.     Despite making complaints to 311 and otherwise filing grievances, Plaintiff was consistently harassed by the Individual Defendants and inmates resulting in numerous incidents due to Plaintiff being on the "World Tour."

43.     As a result of the "hit" the Individual Defendants specifically utilized the inmate population to enforce order within the facility.

44.     Indeed, the Individual Defendants intentionally housed PLAINTIFF in specific areas so that he would be a target to high-risk inmates.

45.     Defendant Individual Defendants then ordered inmates to attack PLAINTIFF.

46.     The Individual Defendants knew the specific risk to PLAINTIFF's safety and disregarded that risk.

47.     As a result, PLAINTIFF was severely assaulted by inmates on February 13, 2020 and April 15, 2020, wherein his jaw was fractured and his face was severely slashed.

48.     Moreover, during this time period, DOC specifically limited their security in all buildings. According to staff, during this time, there had not been any "real searching" which allowed inmates obtain and retain weapons and dangerous contraband.

49.     This policy was explicitly put in place and enforced by defendant BRANN and JENNINGS.

50.     As a result of this limited security, it was reasonably foreseeable that inmates would use weapons to perpetuate violence, and those like PLAINTIFF, who fully rely on DOC to maintain order and protect them, would be injured.

**February Incident**

51.    On or about February 13, 2020 at or around 12:00 p.m., PLAINTIFF was within the vicinity of Robert N. Davoren Complex ("RNDC"), 11-11 Hazen Street, East Elmhurst, New York.

52.    Specifically, on the above date and time, PLAINTIFF was viciously attacked by an inmate who was improperly placed in the housing area with PLAINTIFF.

53.    Indeed, the Individual Defendants knew that PLAINTIFF's assailant was not permitted to be placed in the housing area, but they housed him there notwithstanding.

54.    This assault was preventable, and officers had an opportunity to intervene but failed to do so because the assault was executed due to Plaintiff being on the "World Tour."

55.    During the assault, PLAINTIFF's jaw was fractured and he was in excruciating pain, but the Individual Defendants offered no help or medical assistance.

56.    In fact, PLAINTIFF ran for help from officers and pleaded for medical treatment.

57.    Finally, PLAINTIFF was treated at the clinic within the facility but was not given any medication to subdue the extreme pain.

58.    Although DOC medical staff was aware of PLAINTIFF's teeth being displaced, DOE defendants did not prescribe PLAINTIFF any medication and forced him to wait until the next day to have a dental exam.

59.    The day after the assault, on or about February 14, 2020, PLAINTIFF underwent a dental exam within the DOC facility, and was referred to Bellevue Hospital for further treatment on February 15, 2020.

60.     PLAINTIFF remained in pain and tooth mobility for approximately two weeks before undergoing surgery for his fractured jaw in Bellevue Hospital.

61.     Following this incident, through his family, PLAINTIFF placed several 311 complaints regarding the assault.

### MARCH & APRIL INCIDENTS

62.     On or about March 11, 2020, correction officers permitted inmates into Plaintiff's cell to remove his belongings, resulting in a dispute between Plaintiff and the fellow inmates.

63.     As a result, Plaintiff was escorted to the intake area where defendant COVINGTON falsely accused Plaintiff of possession contraband.

64.     This allegation was false and COVINGTON made this allegation so that Plaintiff would be transferred to George R. Vierno Center ("GRVC") to have World Tour assaults inflicted upon him.

65.     Accordingly, soon thereafter, on or about April 15, 2020 at or around 10:00 a.m., PLAINTIFF was lawfully within the vicinity of George R. Vierno Center (GRVC), 09-09 Hazen Street, East Elmhurst, New York.

66.     Specifically, on the above approximate date and time, PLAINTIFF was viciously attacked by a fellow inmate as the behest of the Individual Defendants and by virtue of his status on the World Tour.

67.     PLAINTIFF's assailant had unlawfully obtained and maintained a sharp object that was contraband due to the unlawful moratorium on searches in DOC during this time.

68.     Individual Defendants either negligently, or intentionally, permitted the PLAINTIFF's assailant to obtain this contraband.

69.     Moreover, the Individual Defendants knew that PLAINTIFF's assailant was a threat to PLAINTIFF's safety, but did nothing to prevent the attack.

70.     Thus, not only was this assault preventable, but the DOE Defendants had an opportunity to intervene but failed to do so.

71.     During the assault, PLAINTIFF's face was severely slashed, but the DOE Defendants staff offered no help or medical assistance.

72.     When PLAINTIFF finally was treated by medical staff, he received approximately hundred (100) stitches to his face to close the approximately thirteen (13) cm wound. PLAINTIFF also sustained a laceration to his scalp.

73.     Following the assault, the Individual Defendants took photographs of PLAINTIFF and his injury and posted them on the Internet, in violation of PLAINTIFF's privacy and rights under HIPPA.

74.     The officers made jokes about the slashing, admitted that DOC had a policy of limited security during this timeframe, and stated that there "hasn't been any real searching."

75.     This was not an isolated incident; PLAINTIFF had been consistently subjected to abuse by DOC staff who were using inmates as a means to "enforce" their rules and authority within DOC.

76.     Following this incident, PLAINTIFF, through his family, put in several 311 complaints following all incidents, including this incident.

77.     As a result of the malicious assault, battery, deliberate indifference, malicious abuse of process, failure to protect, negligence, and negligent hiring/training/retention of Defendants, failure to intervene, cruel and unusual punishment, and the other negligent and intentional acts alleged herein, *inter alia*., PLAINTIFF is still experiencing pain and permanent injuries.

## CLAIM ONE
**Under Federal Law**
**DELIBERATE INDIFFERENCE TO SAFETY/MEDICAL NEEDS**

78.     PLAINTIFF repeats and realleges each and every allegation as if fully set forth herein.

79.     The Individual Defendants were aware of a risk to PLAINTIFF's safety and a need for medical care and failed to act in deliberate indifference to PLAINTIFF's needs.

80.     Specifically, they knew of a specific threat to his safety and refused to address that threat, ignored that threat, and as a result PLAINTIFF was injured.

81.     Accordingly, defendants violated the Fourth, Fourteenth, and Eighth amendments because they acted with deliberate indifference to PLAINTIFF's medical needs and safety.

82.     As a direct and proximate result of this unlawful conduct, PLAINTIFF sustained the damages hereinbefore alleged.

## CLAIM TWO
**Under Federal Law**
**FAILURE TO INTERVENE**

83.     PLAINTIFF repeats and realleges each and every allegation as if fully set forth herein.

84.     Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

85.     Accordingly, the defendants who failed to intervene violated the First, Fourth, Fifth And Fourteenth Amendments.

86.     As a direct and proximate result of this unlawful conduct, PLAINTIFF sustained the damages hereinbefore alleged.

87.     PLAINTIFF repeats, reiterates, and re-alleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

**CLAIM THREE**
**Under State Law**
**NEGLIGENCE**

88.     Defendant City through DOC and the Individual Defendants have a duty of care to the inmates/individuals in their facilities, including the duty to protect their physical and mental health and safety.

89.     In relation to that duty of care, the Individual Defendants knew or should have known that PLAINTIFF faced a risk to his health and wellbeing. City and the Individual Defendants breached their duty to protect PLAINTIFF from harm by failing to take any actions to protect him from these risks to his safety.

90.     Specifically, the City and the Individual Defendants placed PLAINTIFF in a housing area with individuals who posed a risk to his safety.

91.     City and the Individual Defendants knew, or should have known, that PLAINTIFF about this risk, but did not take action to protect PLAINTIFF.

92.     Moreover, the Individual Defendants informed the inmate population that PLAINTIFF was to be targeted, and turned a blind eye to violence perpetrated against PLAINTIFF.

93.     City and the Individual Defendants were also negligent in obtaining and rendering medical care, failed to adhere to generally accepted medical practices and  care, and failed to protect the individuals housed in their facility and in their care.

94.     As a result of these actions and inactions by prison staff and officials, PLAINTIFF suffered serious personal injuries, pain and suffering, loss of life's pleasures, and emotional distress.

**CLAIM FOUR**
**Under State Law**
**ASSAULT and BATTERY**

95.     PLAINTIFFS repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

96.     The Individual Defendants placed a mark on PLAINTIFF, which directly placed PLAINTIFF in apprehension of imminent harmful and offensive bodily contact.

97.     Inmates who assaulted and battered PLAINTIFF were agents of Defendant SIMON and Individual Defendants.

98.     Defendants' aforementioned actions caused PLAINTIFF to be subjected to unauthorized physical contact that resulted in injury.

99.     Defendant SIMON and Individual Defendants did so without privilege or consent from PLAINTIFF.

100.     As a result of defendants' conduct, PLAINTIFF suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

## CLAIM FIVE
### Under State Law
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

101.    PLAINTIFF repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

102.    The aforementioned conduct was extreme and outrageous, and exceeded all reasonable bounds of decency.

103.    The aforementioned conduct was committed by the Individual Defendants while acting within the scope of their employment by defendant City.

104.    The aforementioned conduct was committed by Individual Defendants while acting in furtherance of their employment by defendant CITY.

105.    The Defendant employer CITY is responsible for the wrongdoings of their employees and agents under the doctrine of *respondeat superior*.

106.    The aforementioned conduct was intentional and done for the sole purpose of causing severe emotional distress to PLAINTIFF.

107.    As a result of these actions and inactions of the Defendants, PLAINTIFF suffered damages alleged herein.

## CLAIM SIX
### Under State Law
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

108.    PLAINTIFF repeat and reallege each and every allegation as if fully set forth herein.

109.    By reason of the foregoing, each Defendant was negligent in committing conduct that inflicted emotional distress upon PLAINTIFF.

110.    The negligent infliction of emotional distress by these Defendants was unnecessary and unwarranted in the performance of their duties.

111.    Defendant, their officers, agents, servants, and employees were responsible for the negligent infliction of emotional distress upon PLAINTIFF.

112.    The Defendant employer CITY is responsible for the wrongdoings of their employees and agents under the doctrine of *respondeat superior*.

113.    As a direct and proximate result of the misconduct and abuse of authority detailed above, PLAINTIFF sustained the damages hereinbefore alleged.

### CLAIM SEVEN
**Under Federal Law**
### MUNICIPAL LIABILITY

114.    PLAINTIFF repeats, reiterates, and re-alleges each and every allegation contained in the proceeding paragraphs with the same force and effect as if fully set forth herein.

115.    Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

116.    Specifically, DOC officers have had a long history of unlawfully using inmates to restore order within the DOC Facilities.

117.    For years, through Department reports, civil litigation, and criminal indictments, the City and Defendants have been aware of the routine, dangerous and unconstitutional sanctioning of inmate-on inmate violence at jail facilities on Rikers Island.

118.    In many instances, DOC staff instigated, encouraged or sanctioned the use of inmate enforcers to discipline other inmates. That practice caused PLAINTIFF'S injuries.

119.    In March 2007, Tyrek Shuford was assaulted by several other prisoners who had been given "authority" to maintain order at RNDC. The attack was unprovoked and guards merely stood by and watched while the assault took place. Shuford asked for medical attention for his injuries, but the guards refused.

120.    A month following the incident, Shuford was attacked again. Shuford suffered multiple fractures and cuts and bruises to his face and body. See Shuford v. City of New York, U.S.D.C. (S.D. NY), Case No. 1:09-cv-00945-PKC.[1]

121.    On February 14, 2008, the Bronx District Attorney ("DA") indicted correction officer Lloyd Nicholson of RNDC, for using inmates as enforcers and encouraging inmate-on- inmate violence. The DA charged Officer Nicholson with gang assault, assault, and official misconduct, in connection with a scheme to use teenage inmates to enforce discipline at RNDC. According the DA's press release, the "grand jury charged Nicholson with 'acting in concert' in causing physical injury to two inmates on June 10, 2007 by ordering six other inmates to beat them. One of the two victims sought medical attention and was taken to Elmhurst Hospital for treatment of a collapsed lung.

122.    This indictment was the result of investigations by the New York City Department of Investigations and the Inspector General for DOC which, according to the DA, "uncovered a systematic program allegedly run by Nicholson, in which he would use a select group of inmates to maintain order and enforce discipline. The group of inmates would

---

[1]https://www.prisonlegalnews.org/news/2011/mar/15/373000-settlement-in-new-york-city-juvenile-facility-building-tenders-suit/

enforce rules of conduct establish by Nicholson in exchange for preferential treatment, which included allowing them to extort commissary and telephone privileges as well as personal property from other inmates. It is alleged that Nicholson benefited by not having to constantly monitor his post during his overnight tour of duty."

123.    In March of 2008, the City settled a lawsuit where Schmi Caballero was beaten after a guard became angry with him for spending too long on the phone with his mother. The guard ordered another prisoner to "discipline" Caballero with a broomstick; he was left with a broken nose and blurred vision. See <u>Caballero v. City of New York</u>, U.S.D.C. (S.D. NY), Case No. 1:07-cv-06357-RMB.[2]

124.    On or about September of 2008, RNDC prisoner Alicedes Polanco, 18, was severely assaulted by a group of offenders involved in the Program. "My right eye socket was broken," he said. "My jaw was hit, the right side of my ribs was all bruised." See <u>Polanco v. City of New York</u>, U.S.D.C. (S.D. NY), Case No. 1:09-cv-10131-RMB.[3]

125.    On October 17, 2008, inmate Christopher Robinson died at RNDC, while under the supervision of the DOC, after being beaten by other inmates. The Bronx DA has alleged that Mr. Robinson was "brutally beaten because of his refusal to go along with a violent extortion enterprise against adolescent inmates which was jointly operated by the indicted correction officers and their teenage accomplices."

126.    On information and belief, Mr. Robinson did not receive medical attention immediately after being beaten, but instead bled in holding cells for hours.

---

[2]https://www.prisonlegalnews.org/news/2010/feb/15/rikers-guards-charged-with-using-juvenile-prisoners-to-run-extortion-ring/
[3]https://www.prisonlegalnews.org/news/2010/feb/15/rikers-guards-charged-with-using-juvenile-prisoners-to-run-extortion-ring/

127.     The investigation into Mr. Robinson's death revealed that nine separate officer-sanctioned beatings, of nine separate inmates, had occurred since July 2008 at RNDC.

128.     On January 22, 2009, the Bronx DA indicted three RNDC correction officers for conspiracy, enterprise corruption, and/or assault. The DA, in his press release, alleged that correction officers "acting as managers for an organization referred to as 'the Program' at RNDC.

129.     Under "the Program," correction officers "would cede responsibility for maintaining order to inmates known as 'the Team' whom they personally selected." The Team would "maintain order" and , in exchange, the officers authorized the Team to extort property from other inmates. "Inmates who refused to go along with the Program were punished by being assaulted" by the Team. The officers would generally "designate the date, time, location and manner of the "beatdown."

130.     A lawsuit against the DOC, initiated in 2011 on behalf of inmates who alleged the Department engaged in a pattern of "unnecessary" and "excessive" force. Indeed, a simultaneous investigation conducted by the United State's Office for the Southern District of New York relating to the treatment of young male inmates (age 16-18), began in 2012 and concluded with the issuance of a findings letter dated August 4, 2012, which cited a pattern of practice of  "excessive" and "unnecessary" use of force, failure to adequately protect inmates from inmate-on-inmate violence. [4]

131.     On November 1, 2015, by Order of the Court, The Nunez litigation resulted in a detailed "Settlement" agreement (The Consent Judgment) designed to remedy the alleged "Unconstitutional Practices" in DOC facilities, including reforms targeted to ensure

---

[4] https://www.cobanyc.org/sites/default/files/Nunez-Townhall-Feb2017.pdf

the safety and proper supervision of inmates under the age of 19 and promptly transferring young inmates who express concern for their safety.

132.    In fact, the parties selected an independent monitor to assess compliance with each provision of the Agreement and to submit periodic reports. Pursuant to the Agreement, the Court maintains continuing jurisdiction over the action to ensure compliance with the required reforms. The Agreement will only terminate upon a finding by the Court that the City has achieved substantial compliance with all the provisions of the Agreement, and has maintained such substantial compliance for a period of 24 months.

133.    Moreover, for years, Defendants' own internal data and reporting have shown that the Subject Inmates have been subject to an alarming number of use of force incidents and inmate-on-inmate fights and assaults that far exceed what one would expect in a correctional facility. DOC management regularly received and reviewed volumes of materials that clearly reflected this high level of violence, including 24-hour reports, use of force reports, aggregate data on staff use of force and inmate-on-inmate fights and assaults, internal reports, and recommendations from the NYC Board of Correction.

134.    The Nunez independent Monitor, in it's ninth monitoring period, ranging from July 1, 2019, through December 31, 2019, discusses DOC noncompliance with the under 19 inmate-on-inmate violence, stating that "RNDC's level of disorder and rate of use of force are simply unsafe and the Department's efforts to reduce them have thus far been ineffective."[5]

135.    RNDC is not the only facility at Rikers where guards sanction inmate-on-inmate violence. Roger Cullen, a former correction officer at the Anna M. Kross ("AMKC"), a facility on Rikers Island, testified under oath about an inmate-on-inmate assault

---

[5] https://www1.nyc.gov/assets/doc/downloads/pdf/9thMonitorsReport052920AsFiled.pdf

at AMKC in 2003. See Jackson v. City of New York, et al., 04 Civ. 5799 (DC). In his January 2007 deposition, Cullen testified that the inmate assailant had essentially been deputized as an enforcer by correction officers to control the other inmates. The inmate told the other inmates when to shower, when to lock in, and when to clean their cells. According to Cullen, another correction officer who was off his post at the time the assault occurred, made a false entry in the logbook and then asked Cullen to write a report that claimed that Jackson had slipped and fallen in the shower. According to Cullen, this practice where correction officers conspired to make false reports on incidents involving inmates was termed "write with us." Upon information and belief, Cullen complained to the Department about the above instances of corruption, as well as other instances, as early as September 2003.

136.    Notwithstanding their awareness of the serious risk DOC management has failed to adequately address this long-standing problem through improved training, supervision, and staff disciplinary measures.

137.    By reason of the foregoing, and by conspiring together, assaulting and battering plaintiff, and failing to intervene to prevent such assault and battery, and by sanctioning, encouraging, and failing to prevent and failing to intervene to prevent inmate assailants from assaulting, battering, and using gratuitous, excessive, brutal, sadistic, and unconscionable force, falsely accusing Plaintiff of possessing contraband, subjecting Plaintiff to further degrading and abusive treatment and unlawful, filthy, and cruel conditions of confinement, the Supervisory and Individual Defendants deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourteenth Amendment to the United States Constitution to be free from gratuitous and excessive force, unlawful

deprivation of liberty, degrading and abusive treatment, and unlawful, filthy, and cruel conditions of confinement.

138.   The Supervisory and Individual Correction Officer Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment as DOC officers and employees. These defendants acted willfully, knowingly, and /or with deliberate indifference, and deprived plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and the Fourth, Fifth, Eight, and Fourteenth Amendments, *et seq.*, to the United States Constitution.

139.   The Supervisory Defendants knew and/or should have known that the pattern of sanctioned inmate-on-inmate assaults, and assaults by DOC personnel, described above existed in the City jails prior to and including the time of the assaults on Plaintiff. Their failure to take measures to curb this pattern of brutality constitutes acquiescence in the known unlawful behavior of his subordinates. The prevalence of these practices and general knowledge of their existence at the time of plaintiff's beatings, and the failure of defendants to take appropriate remedial action despite the fact that the use of inmate enforcers, and abuse of inmates by subordinate DOC personnel, had been persistently brought to their attention, constitutes deliberate indifference to the rights and safety of the inmates in their care and custody, including Plaintiff.

140.   By failing to remedy the wrongs committed by their subordinates, and in failing to properly train, screen, supervise, or discipline their subordinates, the Supervisory Defendants caused damage and injury in violation of plaintiffs' rights guaranteed under 42 U.S.C. §1983, and the United States Constitution, including its Fourteenth amendment. These

defendants' conduct had been a substantial factor in the continuation of such violence and a proximate cause of the constitutional violations alleged herein.

141.   Defendant City, through DOC, and acting under the pretense and color or law, has permitted, tolerated and been deliberately indifferent to a pattern and practice of sanctioned inmate-on-inmate assaults, and assaults by DOC personnel upon inmates. This widespread tolerance of correction officers' and other DOC personnel's sanction of inmate assaults, and of assaults by DOC personnel themselves, constitutes a municipal policy, practice or custom and led to plaintiff's assaults. At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its Department of Corrections, and through the individual defendants, had de facto policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

142.   By permitting, tolerating and sanctioning a persistent and widespread policy, practice and custom pursuant to which plaintiff was subjected to beatings and wrongfully deprived of his liberty and dignity while in DOC custody, defendant City has deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including but not limited to, rights guaranteed by the Fourteenth Amendment to the United States Constitution to be free from gratuitous and excessive force, unlawful deprivation of liberty, and cruel and inhumane treatment.

143.    The foregoing customs, policies, usages, practices, procedures and rules of the City and DOC were the direct and proximate cause of the constitutional violations suffered by the PLAINTIFF as alleged herein.

144.    Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the PLAINTIFF'S constitutional rights.

145.    As a direct and proximate result of this unlawful conduct, PLAINTIFF sustained the damages hereinbefore alleged plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, and was otherwise damaged and injured.

## **PRAYER FOR RELIEF**

**WHEREFORE**, PLAINTIFF respectfully requests judgment against defendants as follows:

(a)    Compensatory damages against all defendants, jointly and severally;

(b)    Punitive damages against the individual defendants, jointly and severally;

(c)    Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d)    Such other and further relief as this Court deems just and proper.

DATED:    New York, New York
          November 6, 2020

_____
Katherine E. Smith
233 Broadway, Ste. 900
New York, New York 10279
Tel/ Fax: 347-470-3707
ksmith@legalsmithny.com
*Attorney for Plaintiff*