UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOMONNI MORRIS,

                            Plaintiff,

    -against-

CITY OF NEW YORK, DOC COMMISSIONER
CYNTHIA BRANN, DOC CHIEF OF DEPARTMENT
HAZEL JENNINGS, WARDEN BIBI OGBURN-
SUARES, C.O. NAYAB QAYYUM, C.O. DONNELL
CUMMINGS, C.O. LAQUANA SIMON, C.O.
CLIFTON BROOKS, C.O. ANTHONY JIGGETTS, C.O.
KENNETH WHITE AND C.O. SIMOD COVINGTON,
C.O. N. ROSARIO, C.O. JOHN BAILEY, JOHN and
JANE DOES 1 through 10,

                            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MEMORANDUM DECISION
AND ORDER

20 Civ. 9314 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Jomonni Morris brings this action against Defendants City of New York, Department of Corrections ("DOC") Comm. Cynthia Brann, DOC Chief of Department Hazel Jennings, Robert N. Davoren Complex ("RNDC") Warden Bibi Ogburn-Suares, Correction Officer ("CO") Nayab Qayyum, C.O. Donnell Cummings, C.O. Laquana Simon, C.O. Clifton Brooks, C.O. Anthony Jiggetts, C.O. Kenneth White, C.O. Simod Covington, and DOE Defendants (collectively, the "Defendants"), alleging claims pursuant to 42 U.S.C. § 1983 and state law.[1] Defendants move to dismiss the FAC for failure to state a claim pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) and move to sever and convert their motion to dismiss

---

[1] Plaintiff also names C.O. N. Rosario and C.O. John Bailey but these Defendants have not appeared in this action and have not moved to dismiss the FAC. (*See* First Am. Compl. ("FAC"), ECF No. 10.)

for failure to exhaust administrative remedies into a motion for summary judgment. (Defs.' Notice of Mot., ECF No. 12.)

Defendants' motion to dismiss Plaintiff's federal claims pursuant to Rule 12(b)(6) is GRANTED. This Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.[2]

## I. FACTUAL BACKGROUND

In early 2008, the Bronx District Attorney's Office (the "Bronx DA") uncovered a systematic program at the RNDC, in which a number of correction officers "would use a select group of inmates to maintain order and enforce discipline . . . in exchange for preferential treatment." (*Id.* ¶ 25.) The Bronx DA's investigation resulted in a number of indictments against various officers for "using inmates as enforcers and encouraging inmate-on-inmate violence" at the RNDC. (FAC ¶¶ 24, 26.) The Bronx DA found that the scheme was called the "Program" and ended in approximately 2009. (*Id.*)

Plaintiff alleges that beginning in 2016, Defendants Ogburn-Suares, Covington, Qayyum, Cummings, Simon, Brooks, Jiggetts, White and Does 1–10 (collectively, the "Individual Defendants") "reactivated and reinstated the 'Program'" as the "World Tour." (*Id.* ¶¶ 28–29.) The FAC explains that, similar to the "Program," pursuant to the "World Tour," an officer would place a "hit" on an inmate and the "'marked' inmate would be subject to harassment at the hands of Correction Officers facility-wide." (*Id.* ¶¶ 31–32.) Officers "would threaten to take away privileges and inflict punishment if the inmates did not keep the marked inmate 'in-line' by use of force." (*Id.* ¶ 33.) Inmates also committed violence against the marked inmate to win favor with officers. (*Id.* ¶ 34.) Notably, the FAC is devoid of any facts detailing acts of violence against

---

[2] Defendants' motion to sever and grant summary judgment for failure to exhaust administrative remedies is DENIED.

2

particular inmates pursuant to this scheme. Moreover, Plaintiff alleges—without any factual support and by improperly lumping the Individual Defendants—that, pursuant to the World Tour, the Individual Defendants turned a "blind eye" to the violence and conferred benefits to participating inmates. (*Id.* ¶ 35.) He asserts that the "Individual Defendants" would "falsely accuse marked inmates of possessing contraband to have inmates transferred to different facilities and otherwise inflict punishment." (*Id.* ¶ 36.) Again, the FAC does not include any instances demonstrating the commission of these acts against particular inmates.

On or about May 25, 2018, Plaintiff was in DOC custody and housed at the RNDC. (*Id.* ¶ 38.) Plaintiff alleges that, while in custody, the Individual Defendants placed him on the "World Tour" and put a "hit" on him, resulting in the Individual Defendants and other inmates harassing and attacking Plaintiff. (*Id.* ¶¶ 40–45.) The FAC does not provide factual support for this assertion or specifically indicate which Individual Defendant placed the "hit." Plaintiff also alleges that the Individual Defendants targeted him "because he is the son of a former correction officer" and "they wanted to use him as an example to other inmates." (*Id.* ¶ 41.)[3]

Plaintiff alleges two instances of assault against him pursuant to the "World Tour" (the "World Tour Incidents"). At about 12:00 p.m. on February 13, 2020, while "within the vicinity of" the RNDC, an inmate, who was improperly placed in the housing area, attacked Plaintiff (the "February Incident"). (*Id.* ¶¶ 51–52.) The FAC alleges that the Individual Defendants housed the inmate in the area but knew he was not permitted there. (*Id.* ¶ 53.) It also alleges that the assault was preventable because "officers had an opportunity to intervene but failed to do so because the assault was executed due to Plaintiff being on the 'World Tour.'" (*Id.* ¶ 54.) Notably, the FAC does not provide any factual support for these assertions, such as why the placement was improper

---

[3] While the FAC references Plaintiff's "verbal confrontation with Defendant Simon," it does not indicate how this confrontation relates to the "World Tour." (*Id.* ¶ 39.)

3

or how Individual Defendants knew such placement was improper. As a result of this attack, Plaintiff suffered a fractured jaw and received no offer of medical assistance from the Individual Defendants. (*Id.* ¶ 55.) Plaintiff alleges that he pleaded for help and, at some point, received treatment at the facility's clinic but was not given pain medication, even though he was in "excruciating pain." (*Id.* ¶¶ 55–57.) The FAC does not indicate how long Plaintiff waited for medical care until he was seen at the clinic. The following day, Plaintiff received a dental exam. (*Id.* ¶ 59.) Then, on February 15, 2020, he received a referral to Bellevue Hospital for further treatment. (*Id.*) He was in pain and suffered "tooth mobility for approximately two weeks before undergoing surgery." (*Id.* ¶ 60.)

On or about March 11, 2020 (the "March Incident"), "correction officers permitted inmates into Plaintiff's cell to remove his belongings, resulting in a dispute between Plaintiff and the fellow inmates." (*Id.* ¶ 62.) "As a result, Plaintiff was escorted to the intake area," where Defendant Covington "falsely accused Plaintiff of possess[ing] contraband . . . so that Plaintiff would be transferred to George R. Vierno Center ("GRVC") to have World Tour assaults inflicted upon him." (*Id.* ¶¶ 62–64.) On or about April 15, 2020 at 10:00 a.m., while in the GRVC, an inmate attacked Plaintiff as a result of his status on the "World Tour." (*Id.* ¶¶ 65–66.) Without any indication as to which Defendant, Plaintiff alleges that the attack occurred at the "behest of the Individual Defendants" and that the Individual Defendants permitted the inmate to obtain a sharp object even though they knew the inmate was a threat to Plaintiff's safety. (*Id.* ¶¶ 65–66, 68–69.) He also alleges that the inmate obtained the sharp object because of the "moratorium on searches in DOC." (*Id.* ¶ 67.)

As a result of the attack, Plaintiff suffered a severe slash on his face and laceration to his scalp. (*Id.* ¶¶ 71–72.) He sought but did not receive any medical assistance from "the Doe

4

Defendants." (*Id.* ¶¶ 70–71.) Plaintiff then alleges that he "finally was treated by medical staff." (*Id.* ¶ 72.) The FAC does not indicate how long Plaintiff waited for medical treatment. After the March Incident, "the Individual Defendants took photographs" of Plaintiff's injury and "posted them on the Internet." (*Id.* ¶ 73.) The FAC does not indicate which Individual Defendant took and posted the photos. Plaintiff also alleges that "officers made jokes about [Plaintiff's] slashing" and admitted there is a DOC policy of limited searches and that there has not "been any real searching." (*Id.* ¶¶ 73–74.)

In addition to the World Tour Incidents, Plaintiff alleges that he has been consistently subjected to abuse by the "DOC staff who were using inmates as a means to 'enforce' their rules and authority within DOC." (*Id.* ¶ 75.) As a result of the attacks, he filed "complaints to 311" and grievances. (*Id.* ¶¶ 42, 61, 76.)

At all relevant times, Defendant Brann served as the DOC Commissioner and was responsible for, among other things, "training, supervision and conduct of all DOC personnel" and "the policy, practice, supervision, implementation, and conduct of all DOC matters." (*Id.* ¶ 10.) Defendant Jennings also served as the DOC Chief of Department and was responsible for "supervision, oversight, and discipline of the uniformed security staff in all the [DOC] jails." (*Id.* ¶¶ 13–14.) Defendants Brann and Jennings each received "reports of applications of force, allegations of unreported use of force, and other breaches of security." (*Id.* ¶¶ 11, 15.) Moreover, around the time of the World Tour Incidents, Defendants Brann and Jennings instituted a policy limiting security in "all buildings" and, according to staff, there had not been any "real searching," which allowed inmates to "obtain and retain weapons and dangerous contraband." (*Id.* ¶¶ 48–49.) Plaintiff alleges that, as a result of the policy, "it was reasonably foreseeable that inmates would use weapons to perpetuate violence, and those like [Plaintiff], who fully rely on [the] DOC to

maintain order and protect them, would be injured." (*Id.* ¶ 50.) Plaintiff alleges that Defendants Brann and Jennings "were aware of and specifically sanctioned the World Tour, praising and incentivizing officers who participated in the World Tour." (*Id.* ¶ 30.) Plaintiff, however, does not allege facts to support this assertion.

On November 6, 2020, Plaintiff filed the present suit against Defendants. On January 21, 2021, Plaintiff filed the FAC. Thereafter, on January 29, 2021, Defendants moved to dismiss the FAC pursuant to FRCP 12(b)(6) and to sever and convert their motion to dismiss for failure to exhaust administrative remedies into a motion for summary judgment.

## II. LEGAL STANDARD

### A. Motion to Dismiss.

Under Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully"; stating a facially plausible claim requires the plaintiff to plead facts that enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The factual allegations pled must therefore "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

On a motion to dismiss pursuant to Rule 12(b)(6), a court "accept[s] as true the factual allegations made in the complaint and draw[s] all inferences in favor of the" non-moving party. *BPP Ill., Inc. v. Royal Bank of Scotland Grp. PLC*, 859 F.3d 188, 191 (2d Cir. 2017); *N.J.*

*Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119–20 (2d Cir. 2013). A district court must first review a plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The court then considers whether the plaintiff's well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *Id.*; *see also Targum v. Citrin Cooperman & Co., LLP*, No. 12 Civ. 6909 (SAS), 2013 WL 6087400, at *3 (S.D.N.Y. Nov. 19, 2013).

## III. DEFENDANTS' MOTION TO SEVER AND CONVERT IS DENIED

"The PLRA states: 'No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'" *Washington v. City of New York*, No. 18 Civ. 12306 (CM), 2019 WL 6710422, at *2 (S.D.N.Y. Mar. 15, 2019) (citing 42 U.S.C. § 1997e(a)). "The exhaustion requirement is 'mandatory.'" *Washington*, 2019 WL 6710422, at *2 (quoting *Porter v. Nussle*, 534 U.S. 516, 516 (2002)). It also "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. Moreover, the PLRA mandates "'proper exhaustion'—that is, 'using all steps that the agency holds out, and doing so properly,' [which] entails . . . 'completing the administrative review process in accordance with the applicable procedural rules.'" *Ackridge v. Aramark Corr. Food Servs.*, No. 16 Civ. 6301 (KMK), 2018 WL 1626175, at *9 (S.D.N.Y. Mar. 30, 2018) (quoting *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.")).

"The failure to exhaust is an affirmative defense." *Washington*, 2019 WL 6710422, at *2. "Plaintiffs are 'not required to specifically plead or demonstrate exhaustion in their complaints.'" *Washington*, 2019 WL 6710422, at *2 (*Jones*, 549 U.S. at 216; *Ackridge*, 2018 WL 1626175, at *9 ("A plaintiff need not plead that one of [the] three circumstances exists or that he did in fact exhaust her administrative remedies, because the '[f]ailure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement.'")). "'A complaint cannot be dismissed for failing to plead that administrative remedies were exhausted.'" *Washington*, 2019 WL 6710422, at *2 (quoting *Garvin v. Rivera*, No. 13 Civ. 7054 (RJS), 2015 WL 876464, at *2 (S.D.N.Y. Feb. 28, 2015)). "But 'it can be dismissed if it pleads facts demonstrating that administrative remedies were not exhausted.'" *Id.* (citation omitted).

Defendants contend that "Plaintiff has not satisfied this [exhaustion] requirement as to his allegations in the" Complaint. (Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Br."), ECF No. 13, at 7.) Yet, Plaintiff is not required to plead or demonstrate exhaustion at this stage and Defendants' challenge, without more, is insufficient to satisfy their burden. Consequently, Defendants motion to sever and convert their motion to summary judgment is similarly denied.[4]

## IV. PLAINTIFF FAILS TO STATE CLAIMS FOR DELIBERATE INDIFFERENCE TO SAFETY AND MEDICAL NEEDS

To state a claim under the Fourteenth Amendment[5] for deliberate indifference to medical needs, health or safety, Plaintiff must plausibly allege that

---

[4] Defendants rely on *Washington* but that case is inapposite and does not support Defendants' request that this Court expedite a decision on this issue and order limited discovery here. (Defs.' Br. at 7–8; Defs.' Mem. of Law in Further Supp. of Mot. to Dismiss, ECF No. 24, at 4.) There, the court determined that the case presented an immediate need to decide the issue of exhaustion prior to addressing the merits of plaintiff's motion for preliminary injunction. *Washington*, 2019 WL 6710422, at *1. This case does not present the same sense of urgency.

[5] The parties agree in their briefs that Plaintiff was a pretrial detainee at all relevant times. (Defs.' Br. at 10; Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss, ECF No. 21, at 10 n.7.) Thus, his federal claims are governed by the Due Process Clause of the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

(1) "the challenged conditions were *sufficiently serious* to constitute objective deprivations of the right to due process" (the "objective prong") and (2) defendants "acted with at least *deliberate indifference* to the challenged conditions" (the "*mens rea* prong"). *Darnell v. Pineiro*, 849 F.3d 17, 29–30 (emphasis added); *see also Isaac v. City of N.Y.*, No. 17 Civ. 1021 (PGG), 2018 WL 1322196, at *3 (S.D.N.Y. Mar. 13, 2018) (applying the two-part test to deprivation of medical care claim). To establish the objective prong, Plaintiff "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health.'" *Herbert v. Smith*, No. 20 Civ. 06348 (PMH), 2021 WL 3292263, at *5 (S.D.N.Y. Aug. 2, 2021) (*Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017)). Regarding the *mens rea* prong, "[d]eliberate indifference requires, at a minimum, 'culpable recklessness, *i.e.*, an act or a failure to act that evinces a conscious disregard of a substantial risk of serious harm.'" *Darby v. Greenman*, No. 19-2084, 2021 WL 4202499, at *3 (2d Cir. Sept. 16, 2021) (citations omitted).

As an initial matter, the FAC is riddled with assertions that improperly lump the Defendants together in a group pleading such that, for many of the allegations, it is difficult to discern which Defendant participated in the alleged act or omission. The only Individual Defendants specifically referenced in the FAC are Covington and the Doe Defendants. Consequently, the claims against Defendants Ogburn-Suares, Qayyum, Cummings, Simon, Brooks, Jiggetts, and White are dismissed for failure to allege their personal involvement in any alleged constitutional violations. *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 726 (S.D.N.Y. 2017) ("The 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'") (quoting *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016); *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("[A] plaintiff must plead and prove 'that each Government-official

defendant, through the official's own individual actions, has violated the Constitution.'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

### A. Plaintiff's Deliberate Indifference Claim Against Defendant Covington is Dismissed.

The FAC contains very few factual allegations specifically against Defendant Covington. Regarding the "World Tour," in a conclusory manner, Plaintiff alleges that the Individual Defendants reinstated the "Program" as the "World Tour." While the FAC does explain that, pursuant to this scheme, inmate "enforcers" maintained order by inflicting violence against other inmates at the behest of officers, it is completely devoid of any facts demonstrating whether Covington personally reinstated the Program and how he participated in the scheme. Additionally, there are no factual allegations detailing any instances of violence committed against other inmates pursuant to the "World Tour." Indeed, Plaintiff alleges that the scheme existed for nearly two years prior to Plaintiff's detention in 2018 but provides no facts to demonstrate on what basis that assertion is made. Consequently, the FAC does not plausibly allege that the "World Tour" was reinstated.

Regarding the February Incident, there is no allegation in the FAC that Covington was personally involved in this incident. As explained above, Plaintiff improperly groups the Defendants and fails to plausibly allege that any Individual Defendant, including Covington, participated in the February Incident. Consequently, the February Incident does not give rise to a deliberate indifference claim against Defendant Covington.

While the FAC alleges Covington's personal involvement in the March Incident, it still does not support a deliberate indifference claim. Plaintiff argues that the March Incident supports his claim because, "by putting Plaintiff on the World Tour and ordering inmates to assault him," Covington subjected Plaintiff to "a serious risk of harm" and was deliberately indifferent to it.

(Pl.'s Opp'n at 13.) Plaintiff's argument is unavailing because, as explained, the FAC does not plausibly allege the existence of the "World Tour" and Covington's involvement in such a scheme. Thus, the scheme cannot provide a basis to conclude that a serious risk of harm to Plaintiff existed, and Covington was deliberately indifferent to such harm. Moreover, Plaintiff's allegation that inmates attacked him at "the behest of the Individual Defendants" does not lead to the conclusion that Covington was personally involved in orchestrating the attack.

Without sufficient allegations regarding the "World Tour," the allegations regarding the March Incident amount to a claim that Covington falsely accused Plaintiff in order to have Plaintiff moved to another housing area and, while in the new housing area, inmates attacked Plaintiff. This allegation, however, is insufficient because it provides no facts regarding the new housing area or the other inmates which would lead to the conclusion that Plaintiff faced an unreasonable risk of serious harm. Indeed, contrary to Plaintiff's contention, none of the cases he cites supports such a conclusion here because, in each case, the plaintiff there alleged those additional facts missing here. *See e.g.*, *Walker v. Shaw*, No. 08 Civ. 10043 (CM), 2010 WL 2541711, at *9 (S.D.N.Y. June 23, 2010) (finding that plaintiff sufficiently demonstrated a substantial risk of harm where plaintiff alleged he was housed with members of a rival gang). Even assuming Plaintiff was faced with a substantial risk of harm, there is no basis to conclude that Covington knew or should have known of the risk and was consciously reckless in disregarding it. Consequently, Plaintiff's claim for deliberate indifference to his safety and medical needs against Defendant Covington is dismissed.

**B. Plaintiff's Deliberate Indifference Claim against the Doe Defendants is Dismissed.**

As explained, the FAC fails to plausibly allege the existence of the "World Tour" and the Doe Defendants' participation in such a scheme. Moreover, Plaintiff fails to allege any personal involvement by the Doe Defendants in the February Incident.

Regarding the March Incident, Plaintiff alleges that "the DOE Defendants staff offered no help or medical assistance" after Plaintiff's "face was severely slashed" and his scalp was lacerated. (FAC ¶¶ 71–72.) There is no allegation, however, that Plaintiff requested medical assistance from the Doe Defendants or that any of those Defendants were aware that Plaintiff needed such assistance. Moreover, even assuming Plaintiff sufficiently pleads a serious medical injury that "might have produced death, degeneration, or extreme pain," Plaintiff fails to plead facts demonstrating that the Doe Defendants knew or should have known of the injury and were deliberately indifferent so as to create a substantial risk of serious harm to Plaintiff. *Compare Casanova v. Maldonado*, No. 17 Civ. 01466 (PMH), 2021 WL 3621686, at *7 (S.D.N.Y. Aug. 16, 2021) ("District courts in the Second Circuit have consistently held that . . . lacerations, cuts . . . and other superficial injuries are not sufficiently serious to support a deliberate indifference claim.") *with Ruggiero v. Way*, No. 19 Civ. 3631 (NSR), 2020 WL 5126112, at *7 (S.D.N.Y. Aug. 31, 2020) (injury sufficiently serious where Plaintiff alleged facial laceration that needed to be glued shut and long term effects resulting from a head injury). Indeed, while Plaintiff alleges the Doe Defendants offered no help to him, he also alleges that his injuries "w[ere] treated by medical staff." (FAC ¶ 72.) Accordingly, Plaintiff's deliberate indifference claim fails as to the Doe Defendants.[6]

---

[6] The FAC also asserts a claim for failure to intervene but does not indicate against whom the claim is asserted and when that Defendant failed to intervene. (FAC ¶¶ 83–87.) Plaintiff's opposition clarifies that this claim is asserted against the Individual Defendants and contends that those Defendants failed to protect the Plaintiff from attacks by other inmates. (Pl.'s Opp'n at 16–17.) This failure to protect claim is properly analyzed as one for deliberate indifference to Plaintiff's safety. *See Sutton v. Rodriguez*, No. 18 Civ. 01042 (PMH), 2021 WL 2894834, at *4 (S.D.N.Y. July 9, 2021). As discussed above, however, Plaintiff fails to state a claim for deliberate indifference against any of the Individual Defendants.

## V. PLAINTIFF FAILS TO STATE A CLAIM AGAINST DEFENDANTS BRANN AND JENNINGS

Plaintiff fails to state a claim against Defendants Brann and Jennings for deliberate indifference to safety, health and medical needs. The Second Circuit recently explained that, pursuant to *Iqbal*, there is no longer a special rule for supervisory liability. *Tangreti*, 983 F.3d at 618 (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). In order to plead that a supervisor defendant is liable for an alleged constitutional violation, "'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti*, 983 F.3d at 616 (quoting *Iqbal*, 556 U.S. at 676). Thus, Plaintiff's allegation that Defendants Brann and Jennings are subject to supervisory liability, because of their supervisory roles and failure to take remedial action even though Plaintiff filed 311 complaints and grievances, must fail. Indeed, applying the same test of liability as that applied to the Individual Defendants, it is clear that the FAC does not allege in any way that Defendants Brann and Jennings were personally involved in any alleged constitutional violation.

Plaintiff merely alleges, in a conclusory manner, that these Defendants were aware of, sanctioned, and incentivized the "World Tour," without any factual support. (FAC ¶ 30.) Those conclusory allegations, without more, are insufficient to support liability. Plaintiff also alleges that Defendants Brann and Jennings instituted a policy that "limited [DOC] security." (FAC ¶ 48.) Even if such a policy existed, there is nothing in the FAC indicating that this policy had any connection to the "World Tour." Consequently, Plaintiff fails to plead a claim against Defendants Brann and Jennings for deliberate indifference.

## VI. PLAINTIFF FAILS TO PLEAD *MONELL* LIABILITY

It is well settled that a municipality may be held liable under 42 U.S.C. § 1983 "for the violation of a person's civil rights only if the moving force behind that violation was an official

policy or custom of the municipality." *Williams v. Town of Southington*, 205 F.3d 1327 (2d Cir. 2000) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–94 (1978)). Thus, to prevail on a Section 1983 claim against a municipality, the plaintiff must allege facts showing: (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012). To be actionable, the policy must be both "deliberate" and a "moving force" behind the deprivation of the plaintiff's constitutional rights. *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997).

> To satisfy the first prong, "Plaintiff must allege the existence of one of the following:
>
> > (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a 'custom or usage' and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 390 (S.D.N.Y. 2013).

Plaintiff contends that he has sufficiently alleged municipal liability because (i) the "World Tour" is a persistent and widespread custom or usage, (ii) the World Tour persisted due to the failure of the Defendants City, Brann and Jennings to "properly supervise, investigate, and train DOC staff," and (iii) Defendants Brann and Jennings instituted a policy limiting searches which resulted in Plaintiff's injuries while in the "World Tour." (Pl.'s Opp'n at 15, 19.)

Plaintiff's *Monell* claim fails because the FAC does not sufficiently allege the existence of a policy, custom or practice that was the driving force of any violation of Plaintiff's constitutional rights. First, each policy, custom or practice alleged is based on the existence of the "World Tour,"

which Plaintiff fails to plausibly allege for the reasons explained. Indeed, contrary to Plaintiff's contention, the FAC's allegations regarding the previous "Program," and its conclusory assertion that the scheme was reinstated by an unidentified officer under a new moniker, do not change that conclusion. Moreover, Plaintiff does not provide any facts regarding the revised search policy, beyond the assertion that there had not been any "real searching" or that security was "limited," and no basis to plausibly infer that the policy is connected to the reinstatement of the "World Tour." (FAC ¶¶ 48, 74.) Second, Plaintiff fails to assert that any alleged policy, custom or practice was a driving force behind any violation of Plaintiff's constitutional rights. Consequently, Plaintiff fails to state a claim for municipal liability.

## VII. CONCLUSION

Defendants' motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, (ECF Nos. 12, 22), is GRANTED. Since Plaintiff fails to state a § 1983 claim, this Court declines supplemental jurisdiction over any state law claims that may be alleged. *See Matican v. City of New York*, 524 F.3d 151, 154–55 (2d Cir. 2008). Thus, any state law claims are dismissed.

The Clerk of Court is directed to close the motions accordingly.

Plaintiff may seek leave to amend by letter application, attaching a proposed amended complaint on or before October 29, 2021, if such an amendment would not be futile.

Dated: New York, New York
September 29, 2021

SO ORDERED.

*George B Daniels*

GEORGE B. DANIELS
United States District Judge