**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

JOMONNI MORRIS,                                      :
                                                    :
                          Plaintiff,                 :          OPINION AND ORDER
                                                    :
        -against-                                    :          20 Civ. 9314 (GBD)
                                                    :
CITY OF NEW YORK; ADW BIBI                           :
OGBURN-SUARES, SHIELD NO. 1334; CO SIMOD             :
COVINGTON, SHIELD NO. 17730; CO NAYAB                :
QAYYUM, SHIELD NO. 9600; CO DONNELL                  :
CUMMINGS, SHIELD NO. 12149; CO LAQUANA               :
SIMON, SHIELD NO. 1114; CO CLIFTON BROOKS,           :
JR., SHIELD NO. 12519, CO ANTHONY JIGGETTS,          :
SHIELD NO. 7337, CO N. ROSARIO, CO KENNETH           :
WHITE, SHIELD NO. 15945; CO "JOHN" BAILEY;           :
DOC COMMISSIONER CYNTHIA BRANN, DOC
CHIEF OF DEPARTMENT HAZEL JENNINGS,
NYC DEPARTMENT OF CORRECTION,
CORRECTION OFFICERS JOHN AND JANE DOE 1
THROUGH 10, All Defendants Individually and in their
Official Capacities,

                          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

GEORGE B. DANIELS, United States District Judge:

Plaintiff's first amended complaint ("FAC"), filed on January 21, 2021, asserted claims

pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, and New York State Law against certain

individually named defendants and Doe Defendants 1-10.[1]  (FAC, ECF No. 10, at 1-2.)  On

September 29, 2021, this Court granted Defendants' motion to dismiss Plaintiff's FAC pursuant

to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) and allowed Plaintiff to seek leave to amend

the FAC by letter application. (September 29 Decision, ECF No. 30, at 15.)  This Court found that

---

[1] Plaintiff also asserted claims against additional corrections officers Rosario and Bailey, but those defendants have
not appeared in this action and did not move to dismiss the FAC.

the FAC improperly lumped the individual defendants in group pleadings and failed to allege their personal involvement in any of the alleged constitutional violations. (*Id.* at 9.) Defendants' motion to dismiss had similarly argued that Plaintiff failed to sufficiently plead personal involvement by any of the individual defendants. (Defendants' Memorandum of Law in Support of Motion to Dismiss, ECF No. 13, at 8-9.)

On November 12, 2021, Plaintiff filed the proposed second amended complaint ("Proposed SAC") which asserts claims against certain individual defendants. (*See* Proposed SAC, ECF No. 35-1, ¶¶ 1-2.) The Proposed SAC also includes new allegations pertaining to events that transpired after the FAC was filed. (*Id.* ¶¶ 30-38.)

FCRP 15(a)(2) instructs courts to "freely give leave [to amend a pleading] when justice so requires." The court may deny leave to amend for "good reason," which normally involves an analysis of the four factors: undue delay, bad faith, futility of amendment, or undue prejudice to the opposing party. *Jones v. City of New York*, No. 18 Civ. 1937 (VSB) (GWG), 2021 WL 5562694, at \*5 (S.D.N.Y. Nov. 29, 2021). However, "[w]here a 'plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss ... [and] directly contradicts the facts set forth in his original complaint,' a court is authorized 'to accept the facts described in the original complaint as true.'" *Colliton v. Cravath, Swaine & Moore LLP*, No. 08 Civ. 0400(NRB), 2008 WL 4386764, at \*6 (S.D.N.Y. Sept. 24, 2008) (quoting *Wallace v. New York City Dep't of Corr.*, No. 95 CV 4404, 1996 WL 586797, at \*2 (E.D.N.Y. Oct. 9, 1996)). "It is well established that leave to amend a complaint need not be granted when amendment would be futile. A proposed amendment is futile when it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Morales v. New York Univ.*, No. 20 Civ. 4418 (GBD), 2022 WL 794422, at \*1 (S.D.N.Y. Feb. 14, 2022).

Still, corrective amendments often avoid unnecessary motion practice and amended pleadings may naturally be at odds with original pleadings. *See Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 266–67 (S.D.N.Y. 2008) ("It would be a harsh rule of law indeed if a litigant were to change a statement in an amended pleading to repair a weakness cited by an adversary or by the [c]ourt, only to have the case dismissed because the conforming change in some way may conflict with an allegation in the earlier pleadings.")

In sum, the differences between the FAC and the Proposed SAC are as follows:

(1) the FAC alleges that Covington, Ogburn-Suares, Qayyum, Cummings, Simon, Brooks, Jiggetts, White, and Doe Defendants 1-10 ("Original Individual Defendants")[2] put Plaintiff on the alleged inmate-on-inmate violence program called the "World Tour" while the Proposed SAC alleges that Covington, Simon Mitchell, O'Neil, Rojas, Fernandez, Mangal, Ortiz, Prey-Green, Doe Defendants 1-20 ("Proposed Individual Defendants") put Plaintiff on the "World Tour" (FAC ¶¶ 16-17, 28-29; Proposed SAC ¶¶ 17-18, 46);

(2) the FAC alleges that in February 2020, the Original Individual Defendants knowingly placed another inmate, who later assaulted Plaintiff, in Plaintiff's housing area (FAC ¶ 53) while the Proposed SAC alleges that Defendants Mitchell, O'Neil, and Doe Defendants 1-3 were either 1) not at their assigned posts, 2) told Plaintiff's assailant to inflict serious bodily harm on the Plaintiff, or 3) knew that Plaintiff's assailant posed an unreasonable risk of harm to Plaintiff (Proposed SAC ¶¶ 71, 92, 101, 113, 121, 152, 165, 178, 216, 228, 240);

---

[2] The FAC also includes allegations that Brann (Commissioner of the DOC) and Jennings (Chief of Department of DOC), in their supervisory capacities, were aware of and sanctioned the World Tour and put a policy in place where security was limited in all DOC buildings. (FAC ¶¶ 30, 49.) The Proposed SAC similarly alleges this policy and that Brann and Jennings allowed officers to "hire SRG [gang-affiliated] inmates to formally inflict force on inmates in an effort to control the jails." Thus, Plaintiff alleges that it was reasonably foreseeable that Plaintiff would be injured. (Proposed SAC at ¶¶ 62-65.)

(3) the FAC alleges that in March and April 2020, Defendant Covington falsely accused Plaintiff of possessing contraband so that Plaintiff would be transferred to another facility to have "World Tour" assaults inflicted upon him and the Original Individual Defendants negligently, or intentionally, permitted the Plaintiff's assailant to obtain contraband and took photographs of Plaintiff's injury and posted them online. (FAC ¶¶ 63-64, 73.) The Proposed SAC includes the same allegations about Defendant Covington and alleges that Defendants Rojas and Doe Defendants 5-6 were in the vicinity of the attack and that Doe Defendants 7-8 also took photographs of Plaintiff's injury and posted them online. (Proposed SAC ¶¶ 132-135, 160, 173, 186, 189.)

(4) the Proposed SAC includes new allegations against Defendants stemming from incidents in April and May 2021. (Proposed SAC ¶¶ 200-213.)

Defendants argue that the Plaintiff's attempt to now "substitute a whole new set of individual defendant correction officers, without any explanation" contradicts his earlier allegations and is made "in bad faith, dilatory, and futile." (Defs. Letter in Opp. to Pl. Proposed SAC, ECF No. 38, at 2-3.) They submit that Plaintiff's attempt is prejudicial and that Defendants "should not have to start the case over" to defend against conclusory allegations that still do not detail "who reinstated 'the program,' how did it operate for the last five years. . . and by whom, cases of other individuals who had been placed on the 'World Tour,' and what specifically did each individual defendant do that resulted in plaintiff's alleged injuries." (*Id.* at 3.) Finally, they argue that Plaintiff only received permission from the Court to cure deficiencies in the original allegations—not to add new incidents like the April and May 2021 allegations. (*Id.* at 4.) They assert that these new allegations are conclusory and an attempt to improperly transform the case. (*Id.*)

Defendants are correct that Plaintiff fails to explain why he did not include the Proposed Individual Defendants in the FAC. As no discovery has occurred either before the FAC or after it was filed, it is not clear why Plaintiff was able to provide details on the Proposed Individual Defendants in the Proposed SAC but not in the FAC.

Despite this convoluted sequence, this Court does not view the changes between the FAC and the Proposed SAC as "blatant" or "directly contradictory" as other courts have held. *Compare Wallace*, 1996 WL 586797, at *1 (Plaintiff's original complaint alleged that security guard's actions were not the standard practice at a facility but—after defendants argued in their motion to dismiss that plaintiff failed to state a policy or practice and thus failed to state a claim—plaintiff's amended complaint alleged that the facility did maintain a policy consistent with the security guard's actions) *with Bernadotte v. New York Hosp. Med. Ctr. of Queens*, No. 13-CV-965(MKB), 2014 WL 808013, at *6 (E.D.N.Y. Feb. 28, 2014) ("These sets of allegations, although certainly not consistent, are not directly contradictory. The allegations in the original [c]omplaint can be read as [d]efendant's pretextual reason for terminating [p]laintiff's employment while the [a]mended [c]omplaint attempts to assert the actual, discriminatory reason for such termination") and *Kermanshah*, 580 F. Supp. 2d at 267 (Plaintiff's amended complaint alleged fraudulent acts within the statute of limitations period while the original complaint did not. Defendant argued that the changes were made to expressly avoid dismissal but the Court reasoned that they were not as blatant or directly contradictory enough to warrant dismissal.)

Finally, the new allegations from incidents occurring in 2021 are similar to the 2020 allegation and do not, as Defendants argue, improperly "transform the case." *Cf. Camacho v. City of New York*, No. 19 Civ 11096(DLC), 2020 WL 4014902, at *3 (S.D.N.Y. July 16, 2020) (Amended complaint changed the focus of the case.)

Except for the May 2021 allegations, the additional allegations against the newly Proposed Individual Defendants are futile. First, Plaintiff failed to properly allege how the "World Tour" was reinstated—the Proposed SAC only adds that it was "well known within Rikers; staff and inmates alike know about the existence of the World Tour and their understanding of its meaning is uniform . . ." and that "several other inmates have filed claims relating to World Tour injuries." (Proposed SAC ¶¶ 30-31.) As stated in the September 29 Decision, without more details on how each of the Proposed Individual Defendants personally participated in the "World Tour" and details on other instances of violence against other inmates, the Proposed SAC like the FAC does not plausibly allege that the "World Tour" was reinstated by any particular defendants.

Second, except for the May 2021 allegations, Plaintiff's Proposed SAC allegations are still insufficient for a federal § 1983 claim against the Proposed Individual Defendants. The objective prong of this claim is "satisfied when, for example, 'prison guards simply stand by and permit an attack on an inmate by another inmate to proceed' or 'where there is prior hostility between inmates, or a prior assault by one inmate on another, and those inmates are not kept out of contact from one another.'" *Kramer v. Dep't of Corr.*, No. 3:15-CV-00251 (RNC), 2019 WL 4805152, at *3 (D. Conn. Sept. 30, 2019), *aff'd*, 828 F. App'x 78 (2d Cir. 2020). The subjective prong requires the plaintiff to "prove that an official acted intentionally or recklessly, and not merely negligently." *Hamilton v. Westchester Dep't of Corr.*, No. 19-CV-3838 (KMK), 2020 WL 4271709, at *6 (S.D.N.Y. July 23, 2020).

For the incidents in 2020 and April 2021, the Proposed SAC includes no details on how each Proposed Individual Defendant stood by and "permitted" the attack against Plaintiff. Additionally, the bare allegation that Plaintiff was "on the World Tour" is insufficient since Plaintiff has failed to allege that the "World Tour" was reinstated.

6

In February 2020, the fact that John Does No. 1 and No. 2 were not at their assigned posts, that Plaintiff was "improperly housed" with his assailant, and that the assailant had made threats to Plaintiff does not sufficiently allege how each John Doe "permitted" the attack. (Proposed SAC ¶¶ 88, 89, 90.) The same is true for the allegations against Mitchell, O'Neil, and John Doe No. 3. (*Id.* ¶¶ 103-126.)

As for the March/April 2020 incident, Plaintiff only alleges that Covington caused Plaintiff to be placed in the facility where inmates "had access to dangerous contraband" and not that Covington was aware or present at the attack or how he would have known of prior hostility between the inmates. (*Id.* ¶¶ 120-137.) Plaintiff alleges that John Does 5 and, 6, and Rojas were "in the vicinity," but not that they saw the attack take place or that they allowed it to occur. (*Id.* ¶¶ 150-188.) Finally, Plaintiff only alleges that John Does 7 and 8 took pictures of Plaintiff and posted them on the Internet "*following* the assault." (*Id.* ¶ 189) (emphasis added).

The April 2021 allegations similarly do not allege that Defendants Fernandez and John Does 11 and 12 were present or aware of the alleged attack when it occurred.

Finally, in substance, Plaintiff specifically alleges that in May 2021 Defendants Mangal, Ortiz, and Prey-Green: (1) told other inmates, including Plaintiff's assailants, to subject Plaintiff to "physical violence and that they would be rewarded for same;" (2) were aware of the "unreasonable risk of serious harm to Plaintiff [by the assailant] because [the assailant] was improperly housed with Plaintiff due to prior incidents," that Plaintiff had informed Mangal, Ortiz, and Prey-Green about; and (3) knew that the assailant had a weapon, had obtained keys to Plaintiff's cell, had searched for Plaintiff in another cell and slashed another inmate during that search, and eventually slashed Plaintiff in the presence of Mangal, Ortiz, and Prey-Green and they did not intervene. (*Id.* ¶¶ 215, 227, 239, 217, 229, 241, 220, 232, 244.) These allegations sufficiently state a viable cause of action.

7

*See Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 29 (2d Cir. 1988) (Second Circuit reinstated action against correction officer who allegedly allowed plaintiff's assailant to enter plaintiff's dormitory without authorization and "did not try to stop the assault while it took place" and "stood and watched it continue. . ."); *Cruz v. Nassau Sheriffs Dep't*, No. 10-Civ.-2940 JS ARL, 2010 WL 4740192, at *3 (E.D.N.Y. Nov. 15, 2010) (Allegations that corrections officers (1) allowed an inmate in "administrative segregation" into plaintiff's cell and (2) stood by while plaintiff was attacked and even stated "[l]ets [*sic*] see if you can fight a man" were "colorable Eighth Amendment claim[s]"); *Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 270 (N.D.N.Y. 2018) (Claims brought against officers who were present and failed to protect plaintiff from another officer's use of excessive force survived initial review and required a response from the officers.)

Given the above authority, the May 19, 2021 allegations against Mangal, Ortiz, and Prey-Green may proceed.

## CONCLUSION

Plaintiff may file a second amended complaint for his claims stemming from the May 19, 2021 incident against Defendants Mangal, Ortiz, and Prey-Green only. Otherwise, his motion request for leave to file the SAC is otherwise DENIED.

Dated: July 21, 2022
New York, New York

SO ORDERED

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge

8